IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOANNE CONWRIGHT,

Plaintiff,

v.

CITY OF OAKLAND, et al.,

Defendants.

NO. C09-2572 TEH

ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL

This matter comes before the Court on Plaintiff Joanne Conwright's motion for a new trial. Defendant City of Oakland filed a timely opposition. On May 14, 2012, the Court issued an order construing as a waiver Conwright's failure to file a reply, which was due on May 9, 2012, and advising the parties that it would consider the motion based on the papers that had been timely filed. Upon careful consideration of those papers and the trial record, the Court finds oral argument to be unnecessary and now VACATES the June 4, 2012 motion hearing. Conwright's motion is DENIED for the reasons set forth below.

## I. BACKGROUND

Plaintiff Joanne Conwright contends that she was sexually harassed by one of her former co-workers, Jeffrey Robinson, while she was employed by Defendant City of Oakland. Prior to trial, this Court dismissed all individual defendants and granted in part and denied in part the City's motion for summary judgment.[1] On March 16, 2012, the jury returned a verdict in favor of the City on the only remaining claims. Specifically, the jury found that Robinson's behavior toward Conwright did not create a sexually hostile work

---

[1] The Court dismissed three individual defendants for lack of service. The Court dismissed claims against the fourth individual defendant for failure to state a claim and granted leave to amend, but Conwright chose not to file an amended complaint.

1 environment and that the City was not liable for unlawful retaliation against Conwright.
2 Conwright now moves for a new trial under Federal Rule of Civil Procedure 59.

## II. DISCUSSION

Federal Rule of Civil Procedure 59(a)(1)(A) provides that, after a jury trial, a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Such reasons may include a "verdict [that] is contrary to the clear weight of the evidence," a verdict "based upon false or perjurious evidence," or "to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000). A court may also grant a new trial if it has given "erroneous jury instructions" or failed "to give adequate instructions." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).

Conwright contends that a new trial is warranted on the basis of juror misconduct, erroneous jury instructions, the jury's rendering of a verdict against the clear weight of the evidence, and newly discovered evidence as to her age discrimination and retaliation claims. The Court addresses each set of arguments in turn below.

### A. Juror Conduct

First, Conwright asserts that jury misconduct warrants a new trial. This argument is premised on the following exchange:

> **THE COURT:** Thank you, counsel.
>
> It's now roughly the time we've been leaving each day, [sic] I'll remind you that what we have left [are] the jury instructions which I estimate will take me about 45 minutes to read you the law.
>
> After that you will retire to the jury room and select a foreperson and begin your deliberations. I'm at your command at this point, [sic] if you want me to read the jury instructions tonight we can do that.
>
> If you want to begin deliberating up until 4:00, at which point I have a medical appointment I would have to leave. Do you know or do you want to retire to talk it over?

2

> **UNIDENTIFIED JUROR:** We're planning to continue until 3:00 o'clock.

Tr. at 764:7-19 (Ex. 2 to Boyd Decl.). Because a single juror answered on behalf of the jury, Conwright posits that the jury must have begun discussing the case prior to the start of their deliberations. However, nothing in the record indicates that the jurors discussed anything more than a scheduling matter that the Court had previously raised. Conwright has failed to persuade the Court that such discussion was improper, let alone grounds for a new trial.

### B. Jury Instructions

Conwright next argues for a new trial based on several purported errors in the Court's jury instructions. "Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002). Each party is "entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence," but a court's rejection of "proposed jury instructions that are properly supported by the law and the evidence" will not require reversal if the error is harmless. *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) (citations and internal quotation marks omitted). "In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was not fairly and correctly covered." *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001) (citations, internal quotation marks, and alteration omitted).

As an initial matter, two of Conwright's purported errors were actually included in the jury instructions and therefore cannot be grounds for a new trial. First, Conwright argues that the Court failed to include requested language from *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001):

> **MS. ROSA:** The language reads, if the employer fails to take corrective action after learning of an employee's sexually harassing conduct or takes inadequate action . . . that [emboldens] the harasser to [continue his] misconduct[,] the employer can be deemed to have adopted the offending conduct and its results, as if they had been authorized affirmatively as the employer's policy.

3

Tr. at 719:17-23. However, the Court incorporated this requested change into the final jury instructions as the second paragraph of Instruction No. 21.[2] Jury Instructions at 33 (Ex. 3 to Boyd Decl.). Second, Conwright argues that Instruction No. 24 was erroneous because it did not include her requested language that "informal as well as formal complaint[s] or demands are protected activities under Title [VII]." Tr. at 722:7-8. However, the Court inserted the requested language into Instruction No. 22, which defined "protected activity" as including "formally or informally reporting behavior she reasonably believed to constitute sexual harassment or discrimination." Jury Instructions at 37.

Conwright next argues that Instruction No. 20 was erroneous because it instructed the jury that Conwright would have to prove, as part of her sexually hostile work environment claim, "that Robinson subjected Conwright to verbal or physical conduct of a sexual nature." *Id.* at 30. Conwright argues that the Court should have included "visual" conduct in this instruction because this case included allegations of "leering." Conwright's counsel argued that "the case law seems to indicate that leering would fall under visual. And not under physical contact." Tr. at 718:22-24. However, counsel cited no case law in support of this argument. Moreover, Conwright's own proposed jury instruction did not include "visual" conduct: "3. That Joanne was subjected in the workplace to verbal or physical conduct of a sexual nature by Mr. Jeffrey Robinson." Pl.'s Jury Instruction No. 5 (Docket No. 135 at 7). In addition, the City's anti-discrimination and harassment policy specifically identified "leering" and "prolonged staring" as examples of "physical conduct," whereas examples of "visual conduct" included "[o]bscene, derogatory or demeaning posters, photos, cartoon, e-mail, screen savers or drawings." Pl.'s Trial Ex. 59 at 3. Conwright's counsel specifically directed the jury to consider this exhibit during closing argument:

> One of the most important pieces of evidence that came out of this case is consistently, consistently everyone testified that Ms. Conwright believed and complained about being leered at,

---

[2]The cited portion of the transcript references proposed Instruction No. 23, which became Instruction No. 21 in the final version of the jury instructions. With the parties' consent, the Court eliminated proposed Instructions Nos. 4 and 5 because no interrogatory responses were introduced as evidence and no deposition testimony was read in lieu of live testimony.

4

> leered at on a regular basis two to three times a day constantly by Jeffrey Robinson.
>
> If you look in the back – when you go to the back and you look at the policy it's marked as Exhibit 59. The policy says it prohibits certain types of physical conduct, that definition of harassing conduct is located on page three.
>
> That conduct specifically says leering. It uses the term leering. It uses the term prolonged staring, it uses the term blocking movement or physical interference.

Tr. at 732:3-14 (closing argument by Ms. Boyd) (Docket No. 210). After considering all of the above, the Court concludes that it was neither erroneous nor prejudicial for the instructions to have excluded reference to "visual" conduct.

Finally, Conwright argues that Instruction No. 23 was erroneous because it instructed the jury that placing Conwright on paid administrative leave pending the investigation into her complaint and requiring a fitness-for-duty exam upon her return were not adverse employment actions, and also because it failed to instruct the jury that "being excluded from meetings can be and being [stripped] of work responsibilities can also be seen as adverse employment actions." Tr. at 721:3-5. The Court instructed the jury on administrative leave and the fitness-for-duty examination at the City's request, and without objection from Conwright. *See* Def.'s Proposed Jury Instruction No. 64 (Docket No. 137); Pl.'s Objections to Def.'s Proposed Jury Instructions and Proposed Jury Verdict Form (Docket No. 171) (failing to include any objections to the City's proposed instruction). As to Conwright's second point, she has not persuaded the Court that "the substance of the applicable law was not fairly and correctly covered." *Swinton*, 270 F.3d at 802 (citations, internal quotation marks, and alteration omitted). The Court instructed the jury as follows:

> Under California law, an adverse employment action must materially affect the terms, conditions, or privileges of employment. Under federal law, an action is an adverse employment action if a reasonable person would find it materially adverse – that is, if it would have dissuaded a reasonable employee from making or supporting a charge of harassment or discrimination.
>
> An adverse employment action must be more disruptive than a mere inconvenience or an alteration of job responsibilities. It must be both detrimental and substantial.

5

> Examples of adverse employment actions include: termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities.

Jury Instructions at 39-40. Conwright does not argue that any portion of this instruction was incorrect but instead asserts that the Court should have included "being excluded from meetings" in its list of examples of adverse employment actions. She has cited no authority, however, for the proposition that exclusion from meetings automatically qualifies as an adverse employment action if it does not result in "significantly diminished material responsibilities." Similarly, the latter phrase also indicates when "being stripped of work responsibilities" would rise to the level of an adverse employment action; Conwright concedes by her silence that a mere "alteration of job responsibilities" is not sufficient. The Court is satisfied that Instruction No. 23 accurately stated the law.

As evidence of the purported inadequacy of Instruction No. 23, Conwright points to Jury Note No. 2, which requested clarification on the definition of "substantial" and "material" in that instruction. As the Court was in the process of discussing an appropriate response with counsel, the jury submitted Jury Note No. 3, indicating that it had reached a unanimous verdict. The Court therefore never answered Jury Note No. 2. Neither party objected to the Court's receiving the verdict without answering Jury Note No. 2, and the jury evidently determined that it did not need a response to its note to reach a verdict. It might be, for example, that the jury determined that Conwright failed to show the third element required for a retaliation claim – "that she was subjected to the adverse employment actions because she engaged in protected activity" – regardless of whether she was able to demonstrate that she suffered one or more adverse employment actions. Jury Instructions at 38. Of course, the Court does not know what intermediate conclusions may have been reached by the jury; it raises this example only to demonstrate that any confusion indicated by Jury Note No. 2 does not render the verdict invalid. Conwright has failed to persuade the Court that either Instruction No. 23 or the Court's failure to answer Jury Note No. 2 prior to receiving the jury's verdict requires a new trial.

6

**C. Weight of Evidence**

Conwright next argues that a new trial is warranted because the jury verdict on both her hostile work environment and retaliation claims was against the clear weight of the evidence. When considering a motion for new trial on these grounds, the district court "can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). However, a new trial based on insufficiency of the evidence may be granted "only if the verdict is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result." *E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997) (citations and internal quotation marks omitted). "It is not the courts' place to substitute our evaluations for those of the jurors." *Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir. 2003). Even if the court might have reached a different verdict than the jury, a new trial should not be granted if the jury could have reasonably weighed the testimony or theories of the case in a manner that supports its verdict. *Landes Constr. Co.*, 833 F.2d at 1372. "Doubts about the correctness of the verdict are not sufficient grounds for a new trial: the trial court must have a firm conviction that the jury has made a mistake." *Id.* (citing *Tennant v. Peoria & Pekin Union Ry.*, 321 U.S. 29, 35 (1944) ("Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.")).

In this case, the Court has reviewed the record and finds ample evidence that could have reasonably led to the jury's verdict. For example, although Conwright clearly found Robinson's conduct to be unwelcome and of a sexual nature, a reasonable juror might have weighed the evidence and determined, among other possible reasonable conclusions favorable to the City, that Robinson's conduct was not of a sexual nature, or that a reasonable woman in Conwright's circumstances and with similar characteristics to Conwright would not have considered the working environment to be abusive or hostile. Either of these findings would be sufficient to support a verdict for the City on Conwright's claim for hostile

7

work environment based on sexual harassment. *See* Jury Instructions at 30-31; *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (conduct must be "of a sexual nature"); *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (working environment must be "objectively hostile," which "is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile"). The Court therefore cannot say that this verdict was against the clear weight of the evidence.

Similarly, although Conwright argues that "[t]he jury ignored substantial evidence supporting a verdict of retaliation," Mot. at 12, it is not clear that the jury did, in fact, do so. To the contrary, the jury might simply have weighed the evidence differently than Conwright would have preferred. For example, the jury might have believed the City's evidence that Conwright's job duties did not change after she complained of Robinson's alleged harassment and that Conwright suffered no other adverse actions, or the jury may have found that Conwright failed to prove that any adverse actions she did suffer were caused by her complaints of harassment. Upon the Court's review of the record, either conclusion would be reasonable, and either would support a verdict for the City on Conwright's retaliation claim. *See* Jury Instructions at 37-38; *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (standard for retaliation claims Title VII); *see also Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (standard for retaliation claims under Fair Employment and Housing Act). Conwright correctly argues that proximity may be considered when evaluating retaliation claims, but she does not and cannot argue that proximity necessarily requires a finding of retaliation. While Conwright's arguments explain why a jury verdict in her favor might have been supportable, they do not meet her burden on a new trial motion of demonstrating that a verdict in the City's favor was against the clear weight of the evidence.

**D.     Allegedly New Evidence**

Finally, Conwright asserts that evidence uncovered at trial was sufficient to support her claims for age discrimination and retaliation: namely, that the City's "witnesses testified that Ms. Conwright had complained of age discrimination in 2005 and 2007 when some of

8

her responsibilities were reduced."³ Mot. at 19. To prevail on a motion for a new trial based on newly discovered evidence, "the movant must show the evidence (1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (citation and internal quotation marks omitted).

Conwright cannot satisfy the second prong of this test. The witnesses who testified at trial were known to Conwright, and many of them were deposed prior to trial. Indeed, it is unimaginable that Conwright herself would not have possessed knowledge of the facts that she now claims were uncovered only at trial; she would have known, for example, that she had made prior complaints of age discrimination and that, in her opinion, her job responsibilities had been reduced. Thus, even if the evidence were sufficient to support an age discrimination or retaliation claim – a question that this Court need not and does not reach – a new trial would not be warranted because the evidence in question could have been discovered prior to trial had counsel exercised due diligence.⁴

### III. CONCLUSION

For all of the above reasons, Conwright's motion for a new trial is DENIED.

**IT IS SO ORDERED.**

Dated: 05/30/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

---

³Conwright failed to identify these witnesses or cite to any specific testimony.

⁴For the same reason, if Conwright were to seek reconsideration of the Court's January 20, 2012 summary judgment ruling on her age discrimination claim, leave to file a motion for reconsideration would be denied. Conwright has demonstrated neither "[t]he emergence of new material facts" nor that "the exercise of reasonable diligence" would not have revealed these facts prior to the Court's ruling on summary judgment. Civ. L.R. 7-9(b) (setting forth conditions for granting leave to file a motion for reconsideration).

9